IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JOSEPH A. ROBLES,

      Plaintiff,

v.                                                     CIV 08-0438 JB/KBM

RAY SCHULTZ, CHIEF A.P.D.,
OFFICER M. MCELROY I.D. No. 2769,
and OFFICER C. COMPTON I.D. No. 2884,
each in their individual capacities,

      Defendants.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION FOLLOWING EVIDENTIARY HEARING

In this *pro se* civil rights suit under 42 U.S.C. § 1983, Plaintiff Joseph Robles seeks damages for alleged excessive use of force during his arrest. *See, e.g., Docs. 1, 4, 21.* In his Verified Complaint[1], Plaintiff avowed that he:

> was confronted by APD for an offence. During this encounter one officer had me under gun point and ordered me to place my hands behind my back and walk towards him, as soon as I got near him he then slapped me with his hand gun. I tried to catch myself and another officer kicked me in the face and the first officer then proceeded to kick me in the ribs.
>
> * * * * *
>
> I was transported to UNMH and diagnosed with broken ribs, and cuts to the eyes. After the swelling went down I found out that my nose was also broken. I still cough up blood and blood comes out when I blow my nose.

---

[1] In his Complaint, Robles "declare[s] under penalty of perjury that . . . the information contained [therein] is true and correct. 28 U.S.C. Sec. 1746. 18 U.S.C. Sec. 1621." *Doc. 1* at 10.

*Doc. 1* at 4.  Elsewhere in his Complaint, Robles asserts that during his arrest, he

> offered absolutely no resistance as they held me at gunpoint following their orders to the letter.  The crimes surrounding the arrest were minor property crimes.  At no time during the arrest were the officers in danger.  I never attempted to elude or evade totally submitting to them.

*Id.* at 7.  Plaintiff maintained that a belt tape or dash cam of the incident would corroborate his allegations.

The Court ordered that Defendants file a *Martinez* Report in response to the allegations. *See Docs. 29-31, 37, 39.*  When ordering the *Martinez* Report, I specifically alerted the parties that the "*Martinez* Report may be used in a variety of contexts, including motion for summary judgment or *sua sponte* entry of summary judgment [and when] used for summary judgment purposes, the *pro se* plaintiff must be afforded an opportunity to present conflicting evidence to controvert the facts set forth in the report." *Doc. 25* at 5.  When neither a belt tape nor dash cam were offered as evidence in the *Martinez* Report, I scheduled an evidentiary hearing, in part, to determine whether such recordings exist.

On September 15, 2009, I heard the testimony of three witnesses – Plaintiff Robles and Defendant Police Officers McElroy and Compton – and considered documentary evidence admitted at the hearing.  Having received that evidence, I am satisfied that neither type of recording was made nor was required to be made pursuant to police policy.

I must look to the totality of events in determining whether the officers are entitled to qualified immunity.  As I related in my earlier proposed findings, certain facts are not in dispute. In the wee hours of the morning on March 21, 2007, a 911 caller alerted the police to what looked to be a burglary in progress at the Commercial Door and Hardware, Inc. supply yard.

2

Plaintiff had rammed a truck into the chain-link gate surrounding a secured area of the yard. The officers who responded to that burglary in progress testified that Plaintiff ran from them and had to be ordered out of hiding. *See, e.g., Docs. 29-31* (hereinafter collectively referred to as "*Martinez Report*"), Exhs. B-D.

The parties also agree that during the course of taking Plaintiff into custody, Plaintiff suffered lacerations and swelling to his face, but there is some dispute as to rib fractures. *See id.,* Exh. D (Doc. 29-5 at 13-15) (photographs of Plaintiff immediately after arrest); *id.,* Exh. E (Doc. 29-6) (emergency room medical records); *Supplement to Martinez Report,* Exh H (part 3)(Doc. 31) (Dr. Emmaunel's radiology report of "no evidence of recent fracture" to right ribs). The officers opined that some of Plaintiff's injuries could have occurred when the truck was used to ram the fence before they even attempted to take Plaintiff into custody.

At the hearing, Plaintiff testified, for the most part, consistently with his allegations in the Complaint, although he now admits having tried to elude the police and being forced out of hiding.[2] Of greatest significance to the Court, however, Mr. Robles continues to maintain that the officers ordered him out of hiding **_with his hands behind his back_**. Robles insists that he complied with this directive and offered absolutely no resistance to arrest.

The submitted *Martinez* Report and testimony of the defendant officers tells quite a different version on that issue. Both officers testified that consistent with their training, they ordered Plaintiff who was hiding behind some pallets to come out with his **_hands above his head_** so that they could see if he was armed. According to the officers, Plaintiff instead came out with

---

[2] I have not seen a transcript of the hearing and am relying solely on my memory. If I am erroneous on the received testimony, the parties can alert me in objections to these proposed findings.

his hands in his pockets advancing towards them and would not show them his hands.  The defendant officers contend that because Plaintiff failed to comply with their commands, the force used to effectuate the arrest was justified to assure officer safety and therefore not excessive.  *See, e.g., Estate of Larsen ex rel. Sturdivan v. Murr*, 511 F.3d 1255, 1259-61 (10th Cir. 2008) (emphasizing a suspect's refusal to cooperate as an important factor in finding the officer's use of force against suspect reasonable – "A reasonable officer need not await the 'glint of steel' before taking self-protective action; by then, it is "often ... too late to take safety precautions.").

Officers McElroy and Compton argue that they are entitled to qualified immunity in connection with the incident.  "In determining whether a plaintiff has carried its two-part burden of proving (1) that defendant violated a constitutional right and (2) that the right was clearly established, ordinarily courts must 'adopt' plaintiff's 'version of the facts.'"[3]  *Thomson v. Salt Lake County*, 584 F.3d 1304, 1325 (10th Cir. 2009) (Holmes, J., concurring) (and authorities cited therein).  On a motion to dismiss based upon qualified immunity, a court "must accept the facts as the plaintiff alleges them."  *Riggins v. Goodman*, 572 F.3d 1101, 1107 (10th Cir. 2009).

> However, because at summary judgment we are beyond the pleading phase of the litigation, a plaintiff's version of the facts must find support in the record: more specifically, "[a]s with any motion for summary judgment, '[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts[.]'"

*Thomson*, 584 F.3d at 1312 (quoting *York v. City of Las Cruces*, 523 F.3d 1205, 1210 (10th Cir.

---

[3] *See also Scott v. Harris*, 550 U.S. 372, 380 (2007); *Riggins v. Goodman*, 572 F.3d 1101, 1107 (10th Cir. 2009) (noting that generally in the qualified immunity context in addressing the legal inquiry "we accept the facts as the plaintiff alleges them").

2008)).

Generally, in considering the availability of summary judgment, one looks to whether the material facts, viewed in the light most favorable to the nonmovant, could support a reasonable juror finding in his favor. On the material fact at issue now, Plaintiff relies solely on his own testimony that the officers instructed him to come out of hiding **_with his hands behind his back_** and that he complied with that order. He denies that his hands were in his pockets, and he maintains that he offered absolutely no resistance to the arrest once he was located, such that using *any* force was unreasonable. If a reasonable person could make such a finding under the proper standard of review, I agree that qualified immunity would be unavailable.

In his concurring opinion in the *Thomson* case cited above, Tenth Circuit Judge Holmes "offer[ed] some clarifying words for litigants and district courts about the application of the summary judgment standard of review in the qualified immunity context." *Id.* at 1324 (Holmes, J., concurring)(and authorities cited therein). "Application of the summary judgment standard of review in the qualified immunity context may at first glance seem straight forward. However, in practice, application of the standard frequently has proven to be challenging." *Id.*

> **In addressing the legal issue in the qualified immunity context of a violation *vel non* of a clearly established constitutional right, however, the principal purpose of assessing whether plaintiff's evidence gives rise to genuine issues of material fact is different than it is in the traditional summary judgment analytic paradigm.** Specifically, contrary to the latter, the objective is *not* to determine whether a plaintiff survives summary judgment because plaintiff's evidence raises material issues that warrant resolution by a jury. **Instead, the principal purpose is to determine whether plaintiff's factual allegations are sufficiently grounded in the record such that they may permissibly comprise the universe of facts that will serve as the foundation for answering the *legal* question before the court.** *Cf. Green v. Post*,

5

> 574 F.3d 1294, 196-97 & n.4 (10th Cir. 2009) (citing *Scott* in the context of qualified immunity summary judgment review and declining to incorporate into the universe of relevant facts an allegation refuted by a video-tape in the record); *Weigel*, 544 F.3d at 1156-57 (O'Brien, J., dissenting) (noting that after the relevant universe of facts is "distilled" from the record the "next step" is determine whether those facts "demonstrate" the violation of a clearly established constitutional right). *Compare Pearson v. Callahan*, __ U.S. __, 129 S. Ct. 808, 815-16 (2009) ("First, a court must decide whether the facts that a plaintiff has . . . shown (see [Federal] Rules [of Civil Procedure] 50, 56) make out a violation of a constitutional right."), *with Scott*, 550 U.S. at 380 ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.").
>
> It is only *after* plaintiff crosses the legal hurdle comprised of his or her two-part burden of demonstrating the violation of a constitutional right that was clearly established, that courts should be concerned with the *true* factual landscape—as opposed to the factual landscape as plaintiff would have it.

*Id.* at 1326.

Other than Plaintiff's testimony, nothing could support a finding that he complied with the officers' orders in connection with the arrest. In direct contravention to Plaintiff's claims of compliance and nonresistance, Defendants point to the written police reports and radio discussion, through the dispatcher, between the officers on the scene and a supervisor located elsewhere. The officers further testified that despite Officer McElroy's command to stop and show his hands, Plaintiff Robles continued to ignore Officer McElroy and approached closer with his hands in his pockets. After several commands were ignored, Officer McElroy used an arm-bar take-down technique in order to secure Robles onto the ground as he struggled.

As Judge Holmes points out, in a traditional summary judgment analysis there would be a

disputed issue of material fact grounded upon Plaintiff's testimony to the contrary, that would preclude the entry of summary judgment. But as I read the decision in *Thomson*, Plaintiff bears a heavier burden when entitlement to summary judgment is decided in the qualified immunity context. Again, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts[.]" *Thomson*, 584 F.3d at 1312 (internal quotation marks omitted). And I believe in the qualified immunity context that I must assess Plaintiff's testimony of record in the light of common sense when determining whether any reasonable person could believe Mr. Robles' version of events. It seems incredible to me that any person, much less a trained law enforcement officer, would ever direct a possibly armed hiding suspect to come forward with his hands obscured from view. And Robles' version is indeed blatantly contradicted by the other testimony of record.

That is one of the reasons I provided the parties an opportunity to bring forth any belt recorder or video cam evidence which could provide corroboration of Plaintiff's strange version of events. Now satisfied that no such corroborating evidence exists, I will recommend that summary judgment be granted to the defendant officers on the basis of qualified immunity.

Wherefore,

**IT IS HEREBY RECOMMENDED AS FOLLOWS:**

1. Because there are no allegations of personal involvement by Defendant Schultz, he should be dismissed from this action with prejudice.

2. Summary judgment be entered on all claims against Officers McElroy and Compton on the basis of qualified immunity.

> **THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**

_____
UNITED STATES MAGISTRATE JUDGE