# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

JOSEPH A. ROBLES,

      Plaintiff,

vs.                                                                  No. CIV 08-0438 JB/KBM

RAY SCHULTZ, CHIEF A.P.D.,
OFFICER M. MCELROY I.D. No. 2769,
and OFFICER C. COMPTON I.D. No. 2884,
each in their individual capacities,

      Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Magistrate Judge's Proposed Findings and Recommended Disposition Following Evidentiary Hearing, filed December 7, 2009 (Doc. 47). The Honorable Karen B. Molzen, United States Magistrate Judge recommends that the Court grant summary judgment on all claims pro se Plaintiff Joseph Robles has asserted against Defendant Officers M. McElroy and C. Compton, and grant the motion to reconsider the motion to dismiss of Defendant Ray Schultz, the Chief of the Albuquerque Police Department, and dismiss him from this action. To date, Robles has not filed any objections, and there is nothing in the record indicating that the proposed findings were not delivered. The Court has reviewed the Proposed Findings and Recommended Disposition Following Evidentiary Hearing, and will adopt them in part and reject them in part. The Court adopts the Magistrate Judge's findings and recommended disposition as to Schultz, because there are no allegations of Schultz' personal involvement, and therefore will dismiss the claim against Schultz with prejudice. The Court rejects the Magistrate Judge's proposed findings and recommended disposition as to McElroy and Compton, because the Court finds that

Robles has satisfied his two-part burden to defeat qualified immunity and has shown through his testimony at the evidentiary hearing that there are genuine issues of material fact. The Court, therefore, will deny summary judgment on the basis of qualified immunity as to McElroy and Compton.

## FACTUAL BACKGROUND

The Court adopts Judge Molzen's factual findings, which she made based upon the Defendants' Sealed Martinez[1] Report, filed April 3, 2009 (Docs. 29-31), and the evidentiary hearing held on September 15, 2009. The facts leading up to the encounter between the officers and Robles are undisputed. At 4:54 a.m. on March 21, 2007, 911-dispatch received a call reporting that a vehicle was attempting to break down a gate at the Commercial Door and Hardware, Inc. supply yard, in Albuquerque, New Mexico. See Martinez Report Exhibit A at 1 (Doc. 29-2). Robles used a truck, which had been stolen from a plumbing company, to ram the rear of the truck into the chain-link gate surrounding a secured area of the yard. See Transcript of Evidentiary Hearing at 6:18-25 (taken September 15, 2009)("Tr.")(Levy, Robles). He did not sustain injuries from ramming the truck through the gate. See Tr. at 7:6-13 (Levy, Robles). Robles intended to take steel-door frames. See Tr. at 20:8-14 (Court, Robles); Martinez Report Exhibit B (Doc. 29-3). The police responded to the scene, and Robles initially hid behind the steel-door frames. See 10:19-21 (Robles). He did not attempt to run. See Tr. at 10:4-10 (Levy, Robles).

What happened during the course of Robles' arrest is in dispute. In his Civil Rights Complaint Pursuant to 42 U.S.C. § 1983, filed April 30, 2008 (Doc. 1)("Complaint"), Robles pleads that the Albuquerque Police Department officers confronted him.

---

[1] Martinez v. Aaron, 570 F.2d 317 (10th Cir. 1978).

> During this encounter one officer had me under gun point and ordered me to place my hands behind my back and walk towards him, as soon as I got near him he then slapped me with his hand gun. I tried to catch myself and another officer kicked me in the face and the first officer then proceeded to kick me in the ribs.

Complaint at 4. He also asserts that, during his arrest, he "offered absolutely no resistance as they held [him] at gunpoint following their orders to the letter. The crimes surrounding the arrest were minor property crimes. At no time during the arrest were the officers in danger. [He] never attempted to elude or evade totally submitting to them." Complaint at 7.

At the evidentiary hearing, Robles testified, for the most part, consistently with his Complaint, except that he admitted to hiding when the police arrived and that he came out when the officers ordered him to come out from behind the steel-door frames. The officers do not contest that Robles came out of hiding when they ordered him out. See Martinez Report at 5, Exhibit C at 4. Robles testified that the officers directed him to put his hands behind his back, and that he showed his hands to the officers and then obeyed their instruction. See Tr. at 11:10-13 ("COURT: You didn't show your hands to the officers? ROBLES: Yeah, I showed my hands. He told me to put my hands behind my back and I did. I obeyed the order."); id. at 14:14-15 ("ROBLES: He just told me, he says, come out from behind the door and place your hands behind your back."). He testified that an officer hit him on the back of his head with a gun, and then officers beat him down, kicking him in the head and ribs. See Tr. at 4:19-24 (Robles); id. at 5:7-11 (Robles). Robles testified that he told the officers they did not have to beat him up because he was agreeing to being arrested. See Tr. at 5:12-15 ("ROBLES: During that time, I was telling them all the time, you don't have to do this, because I had already given up. There was no reason for me to fight or anything. I was already caught. And they beat me up."). Robles and the officers agreed that, during the course of taking Robles into custody, Robles suffered lacerations and swelling to his face. See Martinez Report

Exhibit D (photographs of Robles immediately after arrest) at 13-15 (Doc. 29-5); Tr. at 35:6-7 (McElroy).

The officers testified to a different version of the events. McElroy testified that, when he arrived on the scene, he saw a male figure dressed in camouflage -- Robles -- run from the bed of the truck and hide. See Tr. at 28:13-15 (McElroy). McElroy testified he pulled his firearm and ordered Robles to come out from where he was hiding. See Tr. at 30:17-18 (McElroy). McElroy testified that he ordered Robles to raise his hands in the air, but that Robles had his hands in his pockets. See Tr. at 30:25-31:4 (Levy, McElroy). Robles came out of hiding after McElroy's first order, but McElroy contends that Robles' hands were in his pockets and never in the air. See Tr. at 31:25-32:6 (Levy, McElroy). He testified that Robles walked towards him, and then ran towards Compton, so McElroy grabbed Robles and did an arm-bar takedown "straight into the dirt" and held Robles down in the face-down stabilization position. Tr. at 32:19-25 (McElroy); id. at 34:12-15 (McElroy). According to McElroy, Robles was struggling. See Tr. at 34:20-24 (McElroy). He stated that neither officer kicked Robles. See Tr. at 36:16-22 (Levy, McElroy). McElroy also stated that he does not know whether Robles' injuries were sustained from the take-down or from Robles crashing the truck through the chain-linked fence. See Tr. at 35:21-23 (McElroy). Compton testified that he saw Robles crawling. See Tr. at 45:7-13 (Compton). According to Compton, both officers instructed Robles: "let me see your hands, get up, come out," and Compton contends that Robles stood up and put his hands in his pockets. Tr. at 46:5-10 (Compton). Compton stated that McElroy took Robles down and that Robles was struggling. See Tr. at 47:13-14 (Compton). He stated that he did not kick Robles in the face or in the ribs. See Tr. at 48:16-20 (Levy, Compton). He does not know whether the injuries Robles sustained were received during the takedown or when he rammed his truck through the gate. See Tr. at 49:18-22 (Compton).

-4-

An audio recording between one of the officers and a sergeant located elsewhere states:

[Officer on scene]: Hey, Sarge, just to let you know, we've got a in custody 277/275 and criminal 38.

[Sergeant]: 10-4

* * *

[Officer on scene]: 45-year-old male, conscious, breathing, lacerations to his face.

[Sergeant]: 10-4

* * *

[Officer on scene]: Actually, we'll probably have to go in UNMH, so we are going to arrange some relief here soon.

[Sergeant]: Okay, why UNMH? What happened?

[Officer on scene]: Uh, we had to take him to the ground.  He decided he wanted to fight with us and I'm sure some of it was from rammin' the freakin' gate.

[Sergeant]: Alright. You need to have an FI photograph your guy.

[Officer on scene]: Way ahead of ya.

[Sergeant]: Okay.

Martinez Report, Exhibit A-1.

A field investigator arrived, and took photographs of the scene and of Robles' injuries. See Martinez Report Exhibit D at 2-15 (Doc. 29-5).  The officers arrested Robles, called an ambulance, and Robles was transported to the University of New Mexico hospital.  See Martinez Report Exhibit C at 4 (Doc. 29-4).  The emergency room medical records state that Robles had multiple rib fractures and facial lacerations.  See Martinez Report Exhibit E at 3, 5.  The chest poster-anterior and lateral radiology final report, dated March 21, 2007, notes a fracture of the lateral portion of Robles' right ninth rib.  See Martinez Report Exhibit E at 9.  Robles' CAT scan final

report, dated March 21, 2007, notes lateral rib fractures on the right eighth, ninth, and tenth ribs and posterior rib fractures of the right tenth, eleventh, and twelfth ribs.  See Martinez Report Exhibit E at 15-16.[2]  Robles was booked into the Bernalillo County Metropolitan Detention Center ("MDC") on March 21, 2007.  See Martinez Report Exhibit F at 1-2 (Doc. 29-7).  Medical Records from MDC indicate that Robles was admitted to the infirmary on March 22, 2007 for observation and released on April 8, 2007.  See Martinez Report Exhibit H at 1-12 (Doc. 29-9).

## PROCEDURAL HISTORY

Robles filed his Complaint pro se on April 30, 2008, naming the City of Albuquerque, Ray Schultz, and two unknown Albuquerque Police Department officers as Defendants.  His Complaint brings a single claim for excessive force against the Defendants.  See Complaint at 7.  The Court dismissed Robles' claim against the City of Albuquerque, because he made no allegation that the officers' use of excessive force was pursuant to a city custom or policy.  See Memorandum Opinion and Order at 2-3, filed May 7, 2008 (Doc. 4).  On June 11, 2008, Robles amended his Complaint to substitute the two unknown officers with Defendant M. McElroy and Defendant C. Compton in their individual capacities.  See Plaintiff's Motion to Amend Caption, filed June 11, 2008 (Doc. 5).  Schultz filed a motion to dismiss pursuant to rule 12(b)(6) of the Federal Rules of Civil Procedure on December 31, 2008.  See Motion to Dismiss and Memorandum in Support Thereof for Failure to State a Claim Against Defendant Ray Schultz, filed December 31, 2008 (Doc. 15).

---

[2] The Defendants filed a supplemental document to the Martinez Report on April 13, 2009 -- a radiology examination report from the Metropolitan Detention Center.  The report, dated March 25, 2007, states that examination of Robles' right ribs "reveals no evidence of recent fracture."  Defendants' Submission of Supplemental Document to Martinez Report, Exhibit H at 1, filed April 13, 2009 (Doc. 31-2).  The medical reports from the University of New Mexico Hospital and the Metropolitan Detention Center are thus in conflict, and create an additional genuine issue of material fact as to the injuries Robles may have sustained from the officers.

On March 3, 2009, Judge Molzen denied Schultz' motion to dismiss and ordered the Defendants to submit a Martinez Report in accordance with Martinez v. Aaron, 570 F.2d 317 (10th Cir. 1978). See Order on Pending Matters & To File a Martinez Report, filed March 3, 2009 (Doc. 25). On April 3, 2009, the Defendants filed the Martinez Report. See Martinez Report, filed April 3, 2009 (Doc. 29); First Supplement, filed April 7, 2009 (Doc. 30); Second Supplement, filed April 13, 2009 (Doc. 31). Accompanying the Report, the Defendants requested that the Court construe the brief accompanying the Martinez Report as a motion for summary judgment. See Martinez Report at 1. On May 21, 2009, Robles filed his response, which did not object to the evidence submitted, but rather stated: "Plaintiff has asked for [sic] numerous times for belt recorder transcripts and dash cam photos." Plaintiff['] s Response to Defen[d]ants['] Marti[n]ez Report, filed May 21, 2009 (Doc. 37) ("Response"). Robles requested a hearing "to decide what really happen[e]d on the morning of [March 21, 2007]." Response at 1. In their reply, the Defendants argue that, because Robles did not present any evidence to contradict the evidence in the Martinez report, the Court should grant the Defendants summary judgment on all Robles' claims. See Defendants' Reply to Plaintiff's Response to Defendants Martinez Report at 6, filed June 19, 2009 (Doc. 39)("Reply"). In the alternative, the Defendants argue that the Court should reconsider Schultz' motion to dismiss, which the Court previously denied. See Reply at 6.

Judge Molzen issued a Proposed Findings and Recommended Disposition on July 2, 2009, which found that the disposition of the motion for summary judgment turned on a narrow set of disputed facts, and that she did not recommend resolution of the motion for summary judgment based solely on the evidence in the Martinez Report. See Proposed Findings and Recommended Disposition and Order Setting Evidentiary Hearing, filed July 2, 2009 (Doc. 41). The Court adopted her recommendation for an evidentiary hearing and ordered that the Defendants remained

responsible for locating belt-recorder audio or dash-cam video of Robles' arrest.  <u>See</u> Order Adopting Magistrate Judge's Proposed Findings and Recommended Disposition, filed August 21, 2009 (Doc. 43).  Judge Molzen held an evidentiary hearing on September 15, 2009, and heard testimony from Robles, McElroy, and Compton.  Having heard the testimony and considered the documentary evidence admitted at the hearing, Judge Molzen was satisfied that no belt tape or dash cam recordings were taken the night of Robles' encounter with the officers.  She recommends that the Court dismiss Schultz, because there are no allegations of his personal involvement, and recommends that the Court should grant summary judgment on all claims against McElroy and Compton on the basis of qualified immunity.  <u>See</u> Proposed Findings and Recommended Disposition at 7.  To date, no objections have been filed to the proposed findings and recommended disposition.

## <u>LAW REGARDING SUMMARY JUDGMENT</u>

Summary judgment should be rendered only if the pleadings and evidence "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  "The plaintiff's complaint may . . . be treated like an affidavit if it alleges facts based on the plaintiff's personal knowledge and has been sworn under penalty of perjury."  <u>Hall v. Bellmon</u>, 935 F.2d 1106, 1111 (10th Cir. 1991)(citing <u>Jaxon v. Circle K Corp.</u>, 773 F.2d 1138, 1139 (10th Cir. 1985)).

The United States Court of Appeals for the Tenth Circuit has explained that "[a]n issue is 'genuine' if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way."  <u>Thom v. Bristol-Myers Squibb Co.</u>, 353 F.3d 848, 851 (10th Cir. 2003).  A fact issue is "material if under the substantive law it is essential to the proper disposition of the claim."  <u>Id.</u>  Resolution by summary judgment is not appropriate if it requires the district court to make

credibility determinations to reach its decision.  See Norton v. City of Marietta, 432 F.3d 1145, 1154

(10th Cir. 2005)("[A] judge may not evaluate the credibility of witnesses in deciding a motion for

summary judgment.")(quotation omitted).

"When the pro se plaintiff is a prisoner, a court-authorized investigation and report by prison

officials (referred to as a Martinez report) is not only proper, but may be necessary to develop a

record sufficient to ascertain whether there are any factual or legal bases for the prisoner's claims."

Hall v. Bellmon, 935 F.2d 1106, 1109 (10th Cir. 1991)(citing Martinez v. Aaron, 570 F.2d 317,

318-19 (10th Cir. 1978); Gee v. Estes, 829 F.2d 1005, 1007 (10th Cir. 1987)).  The Tenth Circuit

has explained that dismissal of a pro se plaintiff's claim as frivolous is improper if there are disputed

factual findings:

> Although a court may consider the Martinez report in dismissing a claim pursuant
> to § 1915(d) . . . it cannot resolve material disputed factual issues by accepting the
> report's factual findings when they are in conflict with pleadings or affidavits.  Reed
> v. Dunham, 893 F.2d 285, 287 n.2 (10th Cir. 1990); El'Amin v. Pearce, 750 F.2d
> 829, 832 (10th Cir. 1984); Sampley v. Ruettgers, 704 F.2d 491, 493 n.3
> (10th Cir. 1983).  A bona fide factual dispute exists even when the plaintiff's factual
> allegations that are in conflict with the Martinez report are less specific or
> well-documented than those contained in the report.  Because pro se litigants may
> be unfamiliar with the requirements to sustain a cause of action, they should be
> provided an opportunity to controvert the facts set out in the Martinez report.

Hall v. Bellmon, 935 F.2d at 1109.  The Tenth Circuit, in Hall v. Bellmon, also explained that, when

considering whether summary judgment is appropriate, "[a] Martinez report is treated like an

affidavit, and the court is not authorized to accept the factual findings of the prison investigation

when the plaintiff has presented conflicting evidence."  935 F.2d at 1111.

## LAW REGARDING QUALIFIED IMMUNITY

Qualified immunity recognizes the "need to protect officials who are required to exercise

their discretion and the related public interest in encouraging the vigorous exercise of official

-9-

authority." Harlow v. Fitzgerald, 457 U.S. at 807.  Qualified immunity "protects federal and state officials from liability for discretionary functions, and from 'the unwarranted demands customarily imposed upon those defending a long drawn-out lawsuit.'" Roybal v. City of Albuquerque, No. Civ. 08-0181, 2009 WL 1329834, at *10 (D.N.M. Apr. 28, 2009)(Browning, J.)(quoting Siegert v. Gilley, 500 U.S. 226, 232 (1991)).  Issues of qualified immunity are best resolved at the "earliest possible stage in litigation." Pearson v. Callahan, 129 S. Ct. 808, 815 (2009)(quoting Hunter v. Bryant, 502 U.S. 224, 227 (1991)).

Qualified immunity shields government officials from liability where "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 129 S. Ct. at 815 (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  When a defendant asserts qualified immunity at summary judgment, the responsibility shifts to the plaintiff to meet a "heavy two-part burden." Medina v. Cram, 252 F.3d 1124, 1128 (10th Cir. 2001).  The plaintiff must demonstrate on the facts alleged: (i) that the defendant's actions violated his or her constitutional or statutory rights; and (ii) that the right was clearly established at the time of the alleged unlawful activity. See Riggins v. Goodman, 572 F.3d 1101, 1107 (10th Cir. 2009); Casey v. W. Las Vegas Indep. Sch. Dist., 473 F.3d 1323, 1327 (10th Cir. 2007).  In assessing whether the right was clearly established, the court asks whether the right was sufficiently clear that a reasonable officer in the defendant's shoes would understand that what he or she did violated that right. See Casey v. W. Las Vegas Indep. Sch. Dist., 473 F.3d at 1327.  In Saucier v. Katz, 533 U.S. 194 (2001), overruled in part by Pearson v. Callahan, the Supreme Court of the United States held that the court must decide whether there was a constitutional violation first, before it decides whether the law is clearly established. See 533 U.S. at 200-01.  Courts are no longer strictly required to analyze the issues in that order. See Pearson v. Callahan, 129 S. Ct.

at 818.

### 1.    Factual Disputes in the Qualified-Immunity Analysis.

In determining whether the plaintiff has met his or her burden of establishing a constitutional violation that was clearly established, the court construes the facts in the light most favorable to the plaintiff as the non-moving party.  See Scott v. Harris, 550 U.S. 372, 378-80 (2007); Riggins v. Goodman, 572 F.3d at 1107 (noting that the Tenth Circuit "accept[s] the facts and the plaintiff alleges them").  In Thomson v. Salt Lake County, 584 F.3d 1304 (10th Cir. 2009), the Tenth Circuit explained:

> [B]ecause at summary judgment we are beyond the pleading phase of the litigation, a plaintiff's version of the facts must find support in the record: more specifically, "[a]s with any motion for summary judgment, when opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts[.]" York v. City of Las Cruces, 523 F.3d 1205, 1210 (10th Cir. 2008)(quoting Scott [v. Harris], 550 U.S. at 380); see also Estate of Larsen ex. rel Sturdivan v. Murr, 511 F.3d 1255, 1258 (10th Cir. 2008).

Thomson v. Salt Lake County, 584 F.3d at 1312.  The Tenth Circuit, in Rhoads v. Miller, No. 08-8093, 2009 U.S. App. LEXIS 24312 (10th Cir. Nov. 5, 2009), recently explained that the blatant contradictions of the record must be supported by more than other witnesses' testimony:

> In evaluating a motion for summary judgment based on qualified immunity, we take the facts "in the light most favorable to the party asserting the injury."  Scott v. Harris, 550 U.S. 372, 377 (2007).  "[T]his usually means adopting . . . the plaintiff's version of the facts," id. at 378, unless that version "is so utterly discredited by the record that no reasonable jury could have believed him," id. at 380.  In Scott, the plaintiff's testimony was discredited by a videotape that completely contradicted his version of the events.  550 U.S. at 379.  Here, there is no videotape or similar evidence in the record to blatantly contradict Mr. Rhoads' testimony.  There is only other witnesses' testimony to oppose his version of the facts, and our judicial system leaves credibility determinations to the jury.  And given the undisputed fact of injury, Mr. Rhoads' alcoholism and memory problems go to the weight of his testimony, not its admissibility. . . . Mr. Rhoads alleges that his injuries resulted from a beating rendered without resistence or provocation.  If believed by the jury, the events he describes are sufficient to support a claim of violation of clearly established law

under Graham v. Connor, 490 U.S. 386, 395-96 (1989), and this court's precedent.

Rhoads v. Miller, 2009 U.S. App. LEXIS 24312, **6-8 (internal citations and quotations omitted).
In a concurring opinion in Thomson v. Salt Lake County, Judge Holmes stated that the court must
focus first on the legal question of qualified immunity and "determine whether plaintiff's factual
allegations are sufficiently grounded in the record such that they may permissibly comprise the
universe of facts that will serve as the foundation for answering the legal question before the court,"
before inquiring into whether there are genuine issues of material fact for resolution by the jury.
584 F.3d at 1326-27 (Holmes, J. concurring)(citing Goddard v. Urrea, 847 F.2d 765, 770
(11th Cir. 1988)(Johnson, J., dissenting)(observing that, even if factual disputes exist, "these
disputes are irrelevant to the qualified immunity analysis because that analysis assumes the validity
of the plaintiffs' facts.")).

2. **Clearly Established Rights.**

A clearly established right is generally defined as a right so thoroughly developed and
consistently recognized under the law of the jurisdiction as to be "indisputable" and "unquestioned."
Zweibon v. Mitchell, 720 F.2d 162, 172-173 (D.C. Cir. 1983), cert. denied, 469 U.S. 880 (1984).
"Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth
Circuit decision on point, or the clearly established weight of authority from other courts must have
found the law to be as the plaintiff maintains." Strepka v. Miller, 2001 WL 1475058, at * 5 (10th
Cir. 2001)(citing Currier v. Doran, 242 F.3d 905, 923 (10th Cir. 2001)). See Medina v. City and
County of Denver, 960 F.2d 1493, 1498 (10th Cir. 1992). "In determining whether the right was
'clearly established,' the court assesses the objective legal reasonableness of the action at the time
of the alleged violation and asks whether 'the contours of the right [were] sufficiently clear that a
reasonable official would understand that what he is doing violates that right.'" Holland ex rel.

-12-

Overdorff v. Harrington, 268 F.3d at 1186 (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)). The Supreme Court has observed that it is generally not necessary to find a controlling decision declaring the "very action in question . . . unlawful." Anderson v. Creighton, 483 U.S. at 640. However, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Id. at 635.

The Supreme Court recently revisited the proper procedure for lower courts to evaluate a qualified-immunity defense. In Pearson v. Callahan, the Supreme Court held that, "while the sequence set forth [in Saucier v. Katz] is often appropriate, it should no longer be regarded as mandatory." 129 S. Ct. at 818. Rather, lower courts "should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances of the particular case at hand." Id. The Supreme Court also noted that, while no longer mandatory, the protocol outlined in Saucier v. Katz would often be beneficial. See Pearson v. Callahan, 129 S. Ct. at 819. Once the plaintiff has established the inference that the defendant's conduct violated a clearly established constitutional right, a qualified immunity defense generally fails. See Cannon v. City and County of Denver, 998 F.2d 867, 870-71 (10th Cir. 1993).

## LAW REGARDING EXCESSIVE FORCE

When an officer moves for qualified immunity on an excessive-force claim, "a plaintiff is required to show that the force used was impermissible (a constitutional violation) and that objectively reasonable officers could not have thought the force constitutionally permissible (violates clearly established law)." Cortez v. McCauley, 478 F.3d 1108, 1128 (10th Cir. 2007). Courts analyze Fourth-Amendment excessive-force claims "under the 'objective reasonableness' standard that governs other Fourth Amendment inquiries." Cordova v. Aragon, 2009 WL 1707919,

at *3 (10th Cir. 2009).  See Graham v. Connor, 490 U.S. 386, 395 (1989)("[A]ll claims that law enforcement officers have used excessive force . . . in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard.").  The Tenth Circuit has explained:

> Reasonableness is evaluated under a totality of the circumstances approach which requires that we consider the following factors: the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.

Weigel v. Broad, 544 F.3d 1143, 1151-52 (10th Cir. 2008)(internal quotation marks and citations omitted).

The court assesses "objective reasonableness based on whether the totality of the circumstances justified the use of force, and pay careful attention to the facts and circumstances of the particular case."  Estate of Larsen ex. rel Sturdivan v. Murr, 511 F.3d at 1260 (internal quotation marks omitted).  See Cordova v. Aragon, 569 F.3d 1183, 1188 (10th Cir. 2009)(describing the reasonableness test as requiring a court to "slosh our way through the fact-bound morass of reasonableness" by "conducting [a] balancing act")(internal quotation marks omitted).  Additionally, "[t]he 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."  Graham v. Connor, 490 U.S. at 396.

## ANALYSIS

The Defendants request that the Court construe the brief accompanying the Martinez Report as a motion for summary judgment and the evidence in the Martinez Report as an affidavit in support of the motion.  McElroy and Compton contend that their use of force was reasonable in light of Robles' attempt to hide from officers, his alleged refusal to comply with their orders, and his

alleged combativeness during arrest.  See Martinez Report at 2 (Doc. 29).  McElroy and Compton argue that their actions were reasonable because (i) a crime was in progress when they arrived; (ii) the potential threat to officer safety was high because Robles tried to hide and then refused to show his hands, and therefore the officers did not know if he was armed; and (iii) Robles attempted to resist arrest.  See Martinez Report at 11.  The Defendants also request that the Court dismiss Schultz, because Robles has not established supervisor liability under § 1983.  The Court has reviewed Judge Molzen's Proposed Findings and Recommended Disposition Following Evidentiary Hearing, as well as all the pleadings, testimony, and the evidence submitted in the Martinez Report. Because the Court agrees with Judge Molzen that Robles cannot establish Schultz' supervisory liability, the Court will dismiss Robles' claim against him.  The Court concludes, however, that qualified immunity is inappropriate because the record does not blatantly contradict Robles' version of the facts, and taking the facts in the light most favorable to Robles, he has met his two-step burden to defeat qualified immunity.  The Court also finds that Robles has raised genuine issues of material fact and that summary judgment is not appropriate.  The Court, therefore, will not adopt Judge Molzen's findings and conclusions as to McElroy and Compton.

## I.    THE COURT ADOPTS JUDGE MOLZEN'S CONCLUSION THAT THE COURT SHOULD DISMISS SCHULTZ FROM THIS ACTION.

In addition to naming the two officers who arrested him, Robles also named Schultz in his § 1983 claim for excessive force.  Robles' Complaint alleges that Schultz is a proper defendant "due to the fact he is the Chief of Police and should have knowledge as to what actions his officers take." Plaintiff's Answers to Defendants Claims, filed January 20, 2009 (Doc. 21).  There are no allegations, nor support in the record of either the Martinez Report nor the testimony at the evidentiary hearing, that Schultz was personally involved in Robles' arrest.

"Under § 1983, government officials are not vicariously liable for the misconduct of their subordinates." Serna v. Colorado Dep't of Corr., 455 F.3d 1146, 1151 (10th Cir. 2006); Jenkins v. Wood, 81 F.3d 988, 994 (10th Cir. 1996)(stating that "there is no concept of strict supervisor liability under § 1983."). To establish a § 1983 claim against a supervisor for the unconstitutional acts of his subordinates, a plaintiff must show: (i) the supervisor's subordinates violated the Constitution; and (ii) an affirmative link between the supervisor and the violation, "namely the active participation or acquiescence of the supervisor in the constitutional violation by the subordinates." Serna v. Colorado Dep't of Corr., 455 F.3d at 1151 (citing Holland v. Harrington, 268 F.3d 1179, 1187 (10th Cir. 2001)); Green v. Branson, 108 F.3d 1296, 1302 (10th Cir. 1997)).

Robles, in the evidentiary hearing, made no assertion that Schultz participated or acquiesced to McElroy's and Compton's conduct. None of the evidence contained in the Martinez Report supports such a finding. Accordingly, the Court finds that Robles cannot establish the required affirmative link between Schultz and his subordinates. The Court, therefore, finds that dismissal of the claim against Schultz is proper and adopts Judge Molzen's findings and conclusions as to Schultz.

## II.   QUALIFIED IMMUNITY IS NOT APPROPRIATE IN THIS CASE.

McElroy and Compton, in their brief accompanying the Martinez Report, assert that they are entitled to qualified immunity in this case. The burden, therefore, shifts to Robles to meet the Tenth Circuit's "heavy two-part burden" to defeat the qualified immunity defense. Medina v. Cram, 252 F.3d at 1128. Robles must demonstrate on the facts alleged: (i) that McElroy's and Compton's use of force during his arrest violated his Fourth-Amendment right to be free from excessive force; and (ii) that his constitutional right was clearly established at the time of the arrest. See Riggins v. Goodman, 572 F.3d at 1107. According to McElroy and Compton, the force used during the arrest

was reasonable because: (i) the crime was still in progress; (ii) Robles hid and then refused to comply with their commands; and (iii) Robles resisted arrest -- therefore Robles cannot meet his burden.  See Martinez Report at 11.

## A.   THE RECORD DOES NOT BLATANTLY CONTRADICT ROBLES' VERSION OF THE FACTS.

The Court, in evaluating whether Robles has satisfied the two-part burden to defeat qualified immunity, is not to take the facts as the officers have stated them, but rather, must accept the facts as Robles has stated them, unless the Court finds that his version of the facts "is so utterly discredited by the record that no reasonable jury could []believe[] him."  Rhoads v. Miller, 2009 U.S. App. LEXIS 24312, at *6 (quoting Scott v. Harris, 550 U.S. at 380).  Judge Molzen concluded that, other than Robles' testimony, nothing could support a finding that he complied with the officers' orders in connection with his arrest.  Judge Molzen found that the other testimony of record blatantly contradicted Robles' testimony and therefore she recommended that the Court grant summary judgment on the basis of qualified immunity.  The Court disagrees that the record blatantly contradicted Robles' testimony.

The evaluation of the facts for purposes of qualified immunity in this case is on point with the Tenth Circuit's affirmation of the district court's denial of qualified immunity in Rhoads v. Miller.[3]  In that case, the police responded to a complaint that a drunken man in a wheelchair -- the

---

[3] Judge Molzen relied heavily on the Tenth Circuit's assertion in Thomson v. Salt Lake County, that "when opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts[.]"  584 F.3d at 1312 (quoting Scott [v. Harris], 550 U.S. at 380).  The standard is adopted from the Supreme Court's decision in Scott v. Harris, which involved a videotape that undercut the plaintiff's version of events.  This case does not involve a videotape or other objective contradictory evidence, but rather an old-fashioned swearing match between the plaintiff and the officers.  As such, the general rules -- rather than the special rules that have developed for cases involving blatantly contradictory objective evidence, such as a videotape -- apply here.

plaintiff -- was threatening bar patrons.  The plaintiff alleged that two officers arrested him at a bar and that he was taken to jail, where he was wheeled into the garage and beaten by one of the officers without resistence or provocation and then had to be taken to the hospital.  <u>See</u> 2009 U.S. App. LEXIS 24312, at *2.  The officer told a contradictory version of the facts, stating that the plaintiff was drunk and verbally abusive, and was swinging his arms and brushing the officer's chest, to which the officer responded by using an arm-bar takedown of the plaintiff.  <u>See id.</u>, at *3.  He did not dispute that the takedown maneuver injured the plaintiff.   The plaintiff brought an excessive-use-of-force claim and the officer asserted qualified immunity, which the district court rejected.  On appeal, the Tenth Circuit affirmed, finding that there was no videotape or similar evidence in the record to blatantly contradict the plaintiff's testimony, and stating: "There is only other witnesses' testimony to oppose his version of the facts, and our judicial system leaves credibility determinations to the jury."  2009 U.S. App. LEXIS 24312, at *6 ("The weighing of the evidence, the reconciliation of inconsistent testimony, and the assessment of a witness' credibility is solely within the province of the jury.")(citing <u>Allen v. Wal-Mart Stores, Inc.</u>, 241 F.3d 1293, 1297 (10th Cir. 2001)).  The Tenth Circuit reasoned:

> [The plaintiff] alleges that his injuries resulted from a beating rendered without resistence or provocation.  If believed by the jury, the events he describes are sufficient to support a claim of violation of clearly established law under <u>Graham v. Connor</u>, 490 U.S. 386, 395-96 (1989), and this court's precedent . . . The jurors may decide not to credit [the plaintiff's] testimony, but that is their prerogative, not ours.  Therefore, the district court did not err in denying [the officer's] motion for summary judgment based on qualified immunity.

2009 U.S. App. LEXIS 24312, at **8-9.

The factual dispute before the Court in this case is similar.  Robles argues that the officers, without provocation, kicked him in the face and ribs, and that he told the officers they did not have to beat him up because he was agreeing to being arrested.  He also contends that the officers

instructed him to put his hands behind his back, and that he complied with that instruction. The officers contend that Robles had his hands in his pockets, and that they ordered him to take his hands out of his pockets and put them on his head. They further contend that when Robles did not comply, McElroy took him down with an arm-bar takedown. The officers' version of the facts is reiterated in their police reports and in their transmissions through radio dispatch to a sergeant, but those are only recorded memorializations of what McElroy and Compton contend happened. In contrast, in Scott v. Harris, a videotape that contradicted the plaintiff's version of the events discredited his testimony. See 550 U.S. at 379. As Judge Molzen determined after the evidentiary hearing, no belt tape or dashboard camera videotape recorded the incident on March 21, 2007. Instead, McElroy's and Compton's version of the facts and of how they related those facts to others disputes Robles' version of the facts. It is undisputed that Robles was injured, and the photographs taken of Robles immediately after his arrest clearly show the wounds to his face. Moreover, the medical records are consistent with Robles' contentions that the officers kicked him in the face and in the ribs. The records from UNMH radiology and the CAT scan reflect several fractured ribs.

Although Judge Molzen finds it implausible that the officers would instruct Robles to put his hands behind his back,[4] such an issue of credibility goes to the testimony's weight and not its admissibility, and the weighing of Robles' credibility is solely within the province of the jury. See Allen v. Wal-Mart Stores, Inc., 241 F.3d at 1297. On the evidence before the Court, a rational trier of fact could choose to believe either side on the issue whether Robles approached the officers with

---

[4] While it may be improbable that the police would tell a defendant to place his hands behind his back, if they truly intended to violate his constitutional rights, this version is possible. Also, Robles may have, in the heat of a tense moment, misunderstood the officers. Even if the officers told Robles to put his hands up rather than behind his back, the question remains whether the force used -- even if force was necessary -- was reasonable.

his hands raised or his hands in his pockets.  Because the Court finds that the record does not

blatantly contradict Robles' testimony, the Court will take the facts as Robles has asserted them in

its evaluation of the appropriateness of qualified immunity in this case.  See Grass v. Johnson,

322 Fed. Appx. 586, 590 (10th Cir. 2009)(reversing the district court's grant of summary judgment

because "the district court could not have reached the conclusion it did unless it  chose to believe

[the officer] over [the plaintiff].")

### B.   ROBLES HAS MET HIS BURDEN OF ESTABLISHING THAT A CONSTITUTIONAL RIGHT WAS VIOLATED.

The Court, in evaluating whether Robles has met his burden of demonstrating that McElroy

and Compton violated a constitutional right, assumes that Robles' allegations are true.  According

to Robles, he saw the officers arrive and hid behind the metal door frames he had been attempting

to steal.  He saw McElroy draw his firearm and heard McElroy order him to come out from behind

the door frame and put his hands behind his back.  Robles immediately complied, showed his hands

to the officers, then put them behind his back as instructed, and walked towards the officers.  He did

not offer resistence to the arrest or attempt to flee.  According to Robles, McElroy -- the officer

giving the commands -- hit Robles on the back of the head, and Robles fell to the ground.  The

officers then kicked him in the face and the ribs, and one officer got on top of him and held him

down.[5]  Robles testified that he told the officers that they did not have to beat him up because he was

agreeing to the arrest.

Robles' claim that McElroy and Compton used excessive force in the course of arresting him

must be analyzed under the Fourth Amendment and its reasonableness standard.  See Graham v.

---

[5] McElroy testified that Robles was held down in a face-down stabilization position. Compton testified that he put his knee over Robles' shoulder blade to hold him down.

Connor, 490 U.S. at 395.  The inquiry is an objective one.  The Court asks "whether the officers' actions [were] objectively reasonable in light of the facts and circumstances confronting them, without regard to underlying intent or motivation." Weigel v. Broad, 544 F.3d at 1151.  The totality of the circumstances must be taken into account in each particular case, with careful attention paid to the severity of the crime, whether the suspect posed an immediate threat, and whether he was actively resisting arrest or attempting to flee.  See Graham v. Connor, 490 U.S. at 396; Marquez v. City of Albuquerque, 399 F.3d 1216, 1220 (10th Cir. 2005)("Factors to consider in assessing whether the force used was reasonable include: the alleged crime's severity, the degree of potential threat that the suspect poses to an officer's safety and to others' safety, and the suspect's effort to resist or evade arrest.").  The Court also considers whether the officers' own reckless or deliberate conduct in connection with the arrest contributed to the need to use the force employed.  See Jiron v. City of Lakewood, 392 F.3d at 415.

With this framework in mind, the Court turns to the facts and circumstances surrounding Robles' arrest, and asks whether he proffered sufficient evidence such that a rational juror could conclude that McElroy and Compton acted unreasonably.  See Buck v. City of Albuquerque, 549 F.3d at 1288 (noting that whether police used excessive force in a § 1983 case is generally a fact question best answered by the jury).  The officers responded to a 911-call of a possible burglary in progress.  According to Robles, he was bent down picking up the door frames when the officers arrived and the officers saw him run from the back of the truck and hide behind the door frames. He was ordered out of hiding, and taking the facts in the light most favorable to Robles, he complied with the officers' orders to come out of hiding, showed his hands, and put them behind him.  Tenth Circuit precedent focuses on how the crime was committed, whether it was committed in a violent manner, what the arrestee was doing at the point when the use of force was initiated by the officer,

which party was the aggressor, and whether the officer gave the person "a chance to submit peacefully to the arrest." Casey v. City of Federal Heights, 509 F.3d at 1282. See Buck v. City of Albuquerque, 549 F.3d at 1289. Taking the facts as Robles has presented them, his attempted crime had ended once he saw the police, he was unarmed, and, although he initially hid after the officers saw him, he immediately complied with McElroy's command that he come out. According to Robles, the officers were the initial aggressors and Robles was not given a chance to submit peacefully to arrest. Given the totality of the circumstances, the Court finds that the factors in Robles' version of the events weigh in his favor that the degree of force the officers' used against him was unreasonable.

The Court, however, agrees with the officers that, regardless whether they instructed Robles to put his hands behind his back, Robles' hands at some point were not visible to the officers, and it is reasonable for an officer to have legitimate safety concerns. See Mecham v. Frazier, 500 F.3d 1200, 1205 (10th Cir. 2007). This fact weighs in their favor in determining whether it was reasonable for them to use some force in the arrest. The Court finds that, because the officers did not know whether Robles was armed, it was reasonable for the officers to have guns drawn and for the officers to use some force to arrest Robles. Taking the facts in the light most favorable to Robles, however, the officers went beyond the reasonable force necessary to restrain him. The officers took Robles to the ground, and proceeded to kick him in the face and ribs. The photographs and the medical reports of multiple rib fractures support this version of the facts. Accepting Robles' facts as true, the excessive force came after Robles was forced to the ground. The Court finds that, taking Robles' version as true, the officers' assaultive behavior towards Robles, given the totality of the circumstances, was not reasonable. See Butler v. City of Norman, 992 F.2d 1053, 1055 (10th Cir. 1993)(holding that the plaintiff's testimony that officers beat him with flashlights, kneed

him in the groin, and shoved him face-first into a wall supported excessive-force claim and showed a genuine issue of material fact precluding summary judgment on qualified immunity); Frohmader v. Wayne, 958 F.2d 1024, 1026 (10th Cir. 1992)(per curiam)(holding that assaultive behavior against an arrestee by an officer could not be determined to be objectively reasonable as a matter of law); Austin v. Hamilton, 945 F.2d 1155, 1157-58 (10th Cir. 1991)(holding that, under arrestees' version of the facts alleging repeated assaults without provocation, among other abuses, no reasonable officer could have believed such treatment to be constitutionally permissible); Grass v. Johnson, 322 Fed. Appx. 586, 590 (10th Cir. 2009)(finding that there existed a genuine issue of material fact whether an officer acted reasonably when he punched an arrestee in the face after he was in handcuffs and reversing the district court's grant of summary judgment to the officer); Baker v. City of Hamilton, 471 F.3d 601, 607 (6th Cir. 2006)("We have held repeatedly that the use of force after a suspect has been incapacitated or neutralized is excessive as a matter of law."); Fontana v. Haskin, 262 F.3d 871, 880 (9th Cir. 2001)("Gratuitous and completely unnecessary acts of violence by the police during a seizure violate the Fourth Amendment.").

The Court finds that, if Robles' version of events is believed, and Robles peacefully complied with the officers' instructions, it would not have been reasonable for McElroy and Compton to hit Robles on the head with a gun or kick him in the face and ribs. A reasonable fact-finder, faced with Robles' testimony, the pictures of the lacerations and gravel embedded in Robles' face, and the medical reports confirming that he suffered multiple fractured ribs, could determine that Robles' version of events is what happened. Under that view of the evidence presented, the Court finds that no reasonable officer would have believed that the use of that amount of force was appropriate, and therefore Robles has met the first-prong of his two-part burden to defeat qualified immunity.

-23-

**C.     THE RIGHT TO BE FREE FROM EXCESSIVE FORCE IS A CLEARLY ESTABLISHED RIGHT.**

The second hurdle that Robles must clear to overcome McElroy's and Compton's assertion of qualified immunity is to show that the right about which he alleges violation -- in this case, the right to be free from excessive force during a seizure -- is clearly established.  See Casey v. W. Las Vegas Indep. Sch. Dist., 473 F.3d at 1327.  To meet the burden to show that a right is clearly established, a plaintiff need not find a controlling decision declaring the "very act in question" to be unlawful, Anderson v. Creighton, 483 U.S. at 640; rather, it is necessary only that "[t]he contours of the right . . . be sufficiently clear that a reasonable official would understand that what he is doing violates that right," id. at 635.  See Weigel v. Broad, 544 F.3d at 1154 (stating that the Tenth Circuit "do[es] not think it requires a court decision with identical facts to establish clearly" the right at issue in the case).

The right to be free from excessive physical force during the course of an arrest is clearly established under Tenth Circuit precedent.  See York v. City of Las Cruces, 523 F.3d 1205, 1210 (10th Cir. 2008)(holding that a jury could easily find constitutional violations where detainee's arm was broken); Butler v. City of Norman, 992 F.2d at 1055 (holding that plaintiff's testimony that officers beat him with flashlights, kneed him in the groin, and shoved him face-first into a wall supported excessive force claim and showed a genuine issue of material fact precluding summary judgment on qualified immunity); Frohmader v. Wayne, 958 F.2d at 1026 (holding that assaultive behavior against an arrestee by an officer could not be determined to be objectively reasonable as a matter of law); Austin v. Hamilton, 945 F.2d at 1157-58 (holding that, under arrestees' version of the facts alleging repeated assaults without provocation, among other abuses, no reasonable officer could have believed such treatment to be constitutionally permissible).  The Court finds that these

-24-

cases, and many others, define the scope of reasonable police conduct to an extent that no reasonable officer, behaving in the way that Robles alleges McElroy and Compton acted, could believe that his conduct was lawful.

### D.   GENUINE ISSUES OF MATERIAL FACT NECESSITATE A TRIAL.

In <u>Thomson v. Salt Lake County</u>, Judge Holmes explained that the court must focus first on the legal question of qualified immunity and "determine whether plaintiff's factual allegations are sufficiently grounded in the record such that they may permissibly comprise the universe of facts that will serve as the foundation for answering the legal question before the court," before inquiring into whether there are genuine issues of material fact for resolution by the jury. 584 F.3d at 1326-27 (Holmes, J. concurring). Robles has successfully established the violation of a clearly established right and therefore qualified immunity is not appropriate. The burden then shifts to McElroy and Compton to prove that no genuine issue of material fact exists. <u>See</u> <u>Medina v. Cram</u>, 252 F.3d at 1128. The Court finds that genuine issues of material fact remain concerning what happened once the officers arrived at the scene. In this case, the disputed facts are material to the qualified-immunity analysis. <u>See</u> <u>Giles v. Kearney</u>, 571 F.3d 318, 327 n.4 (3d Cir. 2009)("Denying summary judgment on the basis of a factual dispute [upon which qualified immunity turns], therefore, is not an improper "fusion" of qualified immunity analysis and the merits analysis of [the plaintiff's] constitutional claim."). The details of the interaction between Robles and the officers are in controversy. The Court finds, therefore, that summary judgment is inappropriate in this case, and the Court will not dismiss Robles' claim of excessive force asserted against McElroy and Compton on the basis of qualified immunity.

**IT IS ORDERED** that the Magistrate Judge's Proposed Findings and Recommended Disposition Following Evidentiary Hearing are adopted in part and rejected in part. The Court

adopts the Magistrate Judge's findings and recommended disposition as to Defendant Ray Schultz and the claim against Schultz is dismissed with prejudice.  The Court rejects the Magistrate Judge's proposed findings and recommended disposition as to Defendants M. McElroy and C. Compton, and McElroy's and Compton's request for summary judgment on the basis of qualified immunity is denied.

_____
UNITED STATES DISTRICT JUDGE

*Parties and Counsel:*

Joseph A. Robles
Albuquerque, New Mexico

   *Plaintiff Pro Se*

Kathryn Levy
City of Albuquerque Legal Department
Albuquerque, New Mexico

   *Attorneys for the Defendants*

-26-